UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br> VS. <br><br> CARL R. ROSE, <br> MARVIN M. BARNWELL, <br> GEORGE J. CANNAN, SR., <br> GEORGE J. CANNAN, JR., <br> EARL SHAWN CASIAS, <br> HECTOR J. GARCIA, <br> DAVID A. KEENER, <br> CHARLES H. LEAVER, <br> and <br> HARRIS D. BALLOW, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. H-04-2799 |

## MEMORANDUM AND ORDER

In this securities fraud action, Plaintiff Securities and Exchange Commission (SEC) alleges, *inter alia*, that Defendant David Keener violated various provisions of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act"), and rules promulgated thereunder. Keener now moves for summary judgment. After considering the parties' filings and the applicable law, the Court finds that Keener's motion, Docket No. 110, should be and hereby is **GRANTED IN PART AND DENIED IN PART**.

I.    BACKGROUND

Keener is the former Chief Financial Officer ("CFO") and President of EVTC, Inc. According to the SEC, Defendant Harris D. Ballow contacted Keener in 1999 with an offer to help to raise EVTC's stock price by promoting the stock to private foreign

investors. Keener allegedly agreed, and, over the course of the following year, Ballow arranged several sales of EVTC stock to various entities. Ballow served as the representative of the purchasing entities throughout each sale, and the SEC claims that the entities were merely alter egos of Ballow's. The stock purchases arranged by Ballow caused EVTC's stock price to rise significantly. The stock subsequently crashed in September 2000, after Ballow's trading accounts were suspended and his assets frozen. The SEC alleges that Keener knew from the outset both that Ballow was the true purchaser of the EVTC stock and that the purchases were intended artificially to inflate the price of the stock.

The SEC claims that Keener violated federal securities laws and regulations by:

1. Knowingly making material misrepresentations or omissions for the purposes of fraud, in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

2. Knowingly using a device, scheme, or artifice to defraud, in violation of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1);

3. Obtaining money or property by means of untrue statements or omissions of material fact, in violation of Section 17(a)(2) of the Securities Act, *id.* § 77q(a)(2);

4. Engaging in a transaction, practice, or course of business that operated as a fraud or deceit upon a purchaser, in violation of Section 17(a)(3) of the Securities Act, *id.* § 77q(a)(3);

5. Selling unregistered stock, in violation of Sections 5(a) and 5(c) of the Securities Act, *id.* §§ 77e(a) & 77e(c); and

6. Aiding and abetting EVTC in making material false and misleading statements in corporate filings, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 13a-1, 13a-11, and 12b-20, 17 C.F.R. §§ 240.13a-1, 240.13a-11, & 240.12b-20.

The SEC seeks injunctive relief, an accounting, civil penalties, and an order barring Keener from serving as an officer or director of any public company. Keener now moves for summary judgment on all of the SEC's claims.

## II.     ANALYSIS

### A.     Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001) (internal quotation marks and citation omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id*.

### B.     The 1999 and 2001 Allegations

As a threshold matter, Keener asserts that the SEC cannot substantiate any of its claims pertaining to fiscal years 1999 and 2001, because (1) the sale of shares to the private foreign investors took place after the end of the 1999 fiscal year, and (2) Keener left EVTC before its filings were prepared for the 2001 fiscal year. The SEC disputes both claims.

With respect to the 1999 claims, the SEC offers evidence that the private investors acquired the right to purchase more than 10% of EVTC's stock before the end of the 1999 fiscal year.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 22, at 2.)  Any person possessing the right to acquire ownership of shares is considered to be a beneficial owner of those shares, for the purposes of the Exchange Act, for sixty days prior to the expiration of the right to purchase.  *See* 17 C.F.R. § 240.13d-3.  Thus, the SEC has demonstrated at least a genuine issue of material fact as to whether the private investors were beneficial owners during fiscal year 1999, and summary judgment on the 1999 claims is therefore **DENIED**.

With respect to the 2001 claims, the SEC offers evidence that Keener resigned from his position at EVTC in May 2001.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 31, at 3.)  EVTC's fiscal year did not end until September 2001, and the SEC filings upon which the SEC's claims are based were not filed until 2002.  (*See, e.g.*, Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 31 (2001 Form 10-K), at 96.)  Keener did not sign those filings.  (*See id.*)  The SEC has, therefore, failed to provide any evidence that Keener was responsible for any misrepresentations or omissions contained in the 2001 filings.  Accordingly, summary judgment in favor of Keener is hereby **GRANTED** on all claims arising from documents filed for EVTC's fiscal year 2001.

    C.    **The Section 10(b) and Rule 10b-5 Claims**

        1.    **Scienter.**

Keener first argues that the SEC can produce no evidence that Keener knew of Ballow's alleged control of the institutional investors and manipulation of EVTC stock, and, therefore, that the SEC cannot satisfy the scienter element of its Section 10(b) and

Rule 10b-5 claims. The SEC responds by offering transcripts of the prior testimony, at SEC hearings, of Keener and Steven H. Fodrie. Keener objects to this evidence on the ground that it is inadmissible hearsay.

The Federal Rules of Civil Procedure do not expressly permit the introduction of prior testimony as summary judgment evidence. *See* FED. R. CIV. P. 56(e) (referring only to affidavits, depositions, and answers to interrogatories as competent summary judgment evidence). The Fifth Circuit has held, however, that a district court may rely on transcripts of prior testimony in deciding a motion for summary judgment. *See Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993) ("Although Rule 56 does not expressly contemplate the use of such evidence in granting summary judgment, we find no error in relying upon such evidence."). In this case, the proffered testimony, if credible, tends to demonstrate that Keener knew that Ballow was the beneficial owner of the shares purportedly purchased by the private investors. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 12, at 289; *id.*, Ex. 14(a), at 222; *id.*, Ex. 14(b), at 51-52, 58, 60, 64-66, 73, 81-84, 109-111.) The SEC has, therefore, demonstrated a genuine issue of material fact concerning the issue of scienter.

### 2. Materiality.

Keener next argues that, even assuming that he knowingly made the alleged misrepresentations or omissions, those misrepresentations or omissions were not material. A material fact is one that "would [be] viewed by the reasonable investor as . . . significantly alter[ing] the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (internal quotation marks omitted). As the SEC correctly points out, had Keener made public his alleged knowledge that Ballow was a

beneficial owner of more than 10% of EVTC's stock, a reasonable investor might have investigated Ballow's public record, which reflects three felony convictions and one civil securities fraud judgment against Ballow.  That information would, of course, significantly alter the "total mix" of information concerning EVTC stock.  Because, therefore, genuine issues of material fact exist regarding the questions both of scienter of and materiality, summary judgment on the SEC's 10(b) and 10b-5 claims is **DENIED**.

        **D.**        **The Section 17(a)(1) Claim**

Keener challenges this claim on the ground that the SEC cannot prove scienter, as required by Section 17(a)(1).  *See Aaron v. SEC*, 446 U.S. 680, 697 (1980) ("It is our view, in sum, that the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)."), *quoted in Landry v. All American Assurance Co.*, 688 F.2d 381, 387 (5th Cir. 1982).  In other words, Keener propounds the same argument with regard to the 17(a)(1) claim as that analyzed above in the context of the 10(b) and 10b-5 claims.  Because the SEC has offered evidence tending to show that Keener knew that Ballow was the beneficial owner of the EVTC shares purchased by the private investors, it has demonstrated a genuine issue of material fact concerning scienter.  Summary judgment on the 17(a)(1) claim is therefore **DENIED**.

        **E.**        **The Section 17(a)(2) and 17(a)(3) Claims**

Keener argues that, like Section 10(b), Rule 10b-5, and Section 17(a)(1), Sections 17(a)(2) and 17(a)(3) require both scienter and materiality.  As noted above, Keener is incorrect with regard to scienter, which is not an element of a 17(a)(2) or 17(a)(3) claim.  *See Aaron*, 446 U.S. at 701-02.  And while Sections 17(a)(2) and 17(a)(3) do impose a materiality requirement, the SEC has, as discussed above, demonstrated that genuine

issues of material fact exist regarding materiality.  Summary judgment on the SEC's 17(a)(2) and 17(a)(3) claims is therefore **DENIED**.

### F. The Section 5(a) and 5(c) Claims

Keener next contests the SEC's claims arising from Sections 5(a) and 5(c) of the Securities Act, which prohibit the sale of unregistered shares.  Keener argues that the SEC has not proven that the shares issued to the private investors were unregistered.  The SEC responds by offering EVTC's 1999 Form 8-K, which states that the shares were not registered.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 22, at 2 Item 5.)  Keener, in his reply brief, fails to rebut this evidence.  The Court therefore finds that the shares were unregistered.

Keener goes on to claim, however, that the shares, as part of a private offering to a sophisticated investor, fell within the purview of Section 4(2) of the Securities Act, which exempts from the requirements of Sections 5(a) and 5(c) all transactions that do not involve a public offering.  *See* 15 U.S.C. § 77d(2).  The SEC replies that Ballow was in fact acting as an underwriter of EVTC stock – that is, a person who purchases from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security,"[1] *Vohs v. Dickson*, 495 F.2d 607, 620 (5th Cir. 1974) (internal quotation marks omitted) – and thus that the 4(2) exemption is inapplicable.  (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 19 ("EVTC's sale of the stock did not stop with Ballow but continued to persons who did not have contact with EVTC, and . . . Ballow was an underwriter for those sales . . . .").)

---

[1] For the purposes of the *Vohs* definition, "distribution" is construed to mean "public offering."  495 F.2d at 620.

The Court determines whether an individual has acted as an underwriter by considering the totality of the circumstances. *Vohs*, 495 F.2d at 620. The Fifth Circuit has adopted the following guidelines for district courts to use in making such determinations:

> The longer the period of retention by the owner before his sale, the more persuasive would be the argument that the resale is not at variance with an original non-distributive intent. An "investment letter," whereby the owner records his own assertion of what was in his mind when he took the securities, may be probative. An unforeseen change of circumstances since the date of purchase may be evidence that a distribution was not originally contemplated. The nature of the purchaser's past investment and trading practices and the character and scope of his business may be inconsistent with his buying securities for resale to the public.

*Id.*

Here, the purported initial purchasers of the EVTC shares – the private foreign investors – executed subscription agreements in which they represented that they were acquiring the shares "for investment purposes only and not with a view to resale or other distribution thereof . . . ." (Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. 28 (Confidential Subscription Agreement and Investment Letter), at 1.) In addition, the shares themselves bore a legend that restricted their resale. (*See id.*, Ex. 20, at 1.) These facts suggest that Ballow was not acting as an underwriter.

Ballow's past investment and trading practices, however, which have resulted in multiple lawsuits alleging securities fraud and at least one large civil judgment against him, suggest that he did acquire the shares with the intention of passing them off on unsuspecting members of the public. Because this evidence supports the SEC's contentions that Ballow was acting as an underwriter and, therefore, that the sales were

not exempt from registration requirements, summary judgment on the SEC's 5(a) and 5(c) claims is **DENIED**.

### G. The Section 13(a) and Rule 13a-1, 13a-11, and 12b-20 Claims

Finally, Keener contests the SEC's claims arising from Section 13(a) and the rules promulgated thereunder, which impose filing requirements upon companies like EVTC. For the reasons stated above, Keener's scienter challenge to these claims is insufficient to warrant summary judgment. Keener also argues, however, that the claims should be dismissed for failure to satisfy the heightened pleading standard of FED. R. CIV. P. 9(b), which applies to all claims that "sound in fraud."

In fact, although Keener raises the 9(b) issue only with regard to the Section 13(a) and Rule 13a-1, 13a-11, and 12b-20 claims, Rule 9(b) governs all federal securities law claims. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. This requirement applies to federal securities law claims.") (internal quotation marks omitted). Rule 9(b) requires a plaintiff to state the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

In this case, the facts underlying all of the SEC's claims against Keener are clearly stated on the face of the complaint. Simply put, the SEC alleges that Keener knew of Ballow's beneficial ownership and manipulation of more than 10% of EVTC's stock but omitted to include that material information in EVTC's statutorily required SEC filings for 1999, 2000, and 2001. (*See* 1st Am. Compl. at 23-24 ¶ 69.) Keener's motion

for summary judgment on the Section 13(a) and Rule 13a-1, 13a-11, and 12b-20 claims is therefore **DENIED**.

**CONCLUSION**

Because the SEC has produced no evidence to support its contention that Keener was employed by EVTC at the time that the 2001 SEC filings were prepared, Keener's motion for summary judgment on all claims arising from filings for fiscal year 2001 is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**. Because genuine issues of material fact exist concerning the issues of scienter and materiality, Keener's motion for summary judgment on the SEC's remaining Section 10(b), Rule 10b-5, Section 17(a)(1), Section 17(a)(2), and Section 17(a)(3) claims is **DENIED**. Because Keener has demonstrated that the sale of EVTC stock to the private investors was not a public offering, his motion for summary judgment on the SEC's Section 5(a) and 5(c) claims is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**. Because the SEC has pled its Section 13(a) and Rule 13a-1, 13a-11, and 12b-20 claims with sufficient particularity to satisfy FED. R. CIV. P. 9(b), Keener's motion for summary judgment on those claims is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of January, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**