UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § | CIVIL ACTION NO. H-04-2799 |
| v. § § | |
| CARL R. ROSE, *et al.*, § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court are Defendant David A. Keener's Second Motion for Summary Judgment and Supplemental Motion for Summary Judgment.[1] After considering the parties' filings and the applicable law, the Court finds that the motions, Docket Nos. 187 and 201, should be and hereby are **DENIED.**

**I.    BACKGROUND**

This case arises under various provisions of the Securities Exchange Act of 1934 (the "Exchange Act"), the Securities Act of 1933 (the "Securities Act"), and rules promulgated thereunder. A brief summary of background facts is set forth in the Court's Memorandum and Order dated January 17, 2006 (Docket No. 139), in which the Court granted summary judgment to Defendant Keener on any claims arising from SEC filings for the fiscal year 2001 (because Plaintiff produced no evidence showing that Keener still worked at EVTC when those filings were prepared). Summary judgment was denied,

---

[1] The Supplemental Motion for Summary Judgment addresses the SEC's claims under Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c). On October 24, 2006, the Court clarified its previous summary judgment Memorandum and Order, specifying that summary judgment had *not* been granted to Keener with regard to Sections 5(a) and 5(c) (Docket No. 200). Because Defendant Keener had not addressed those claims in his Second Motion for Summary Judgment, the Court allowed supplemental briefing by the parties.

1

however, on all claims against Keener stemming from 1999 and 2000. Keener now moves again for summary judgment on those claims.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

### B. Analysis

As noted above, the Court has already denied summary judgment to Defendant Keener on all claims stemming from 1999 and 2000 (Docket No. 139). Keener's new motions for summary judgment do not raise significantly new arguments, but rather assert that at this late stage in the case, after the parties have completed extensive discovery, the SEC should be able to adduce more evidence demonstrating his liability. The lack of direct evidence showing wrongful conduct, Keener reasons, entitles him to summary judgment.

After reviewing the pleadings, the Court finds that Plaintiff has produced enough evidence of Keener's knowing, reckless, or negligent conduct to defeat the instant motions. Therefore, summary judgment is denied on all claims.

**1. Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a)(1) of the Securities Act**

Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a)(1) of the Securities Act all generally prohibit fraudulent conduct and material misstatements or omissions in connection with the sale of securities. Section 10(b) and Rule 10b-5 apply also to purchases of securities, and Section 17(a)(1) includes offers, but the proscriptions of all three are "substantially the same." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 903 (5th Cir. 1980). To make out a claim under Section 10(b), "a plaintiff must show (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002) (internal quotation marks omitted). Section 17(a)(1) similarly requires a showing of scienter. *Landry v. All American Assurance Co.*, 688 F.2d 381, 387 (5th Cir. 1982) ("It is our view, in sum, that the language of § 17(a) requires scienter under § 17(a)(1) . . .").

Defendant Keener's sole argument with regard to these claims is that the SEC has produced no evidence demonstrating scienter. Keener argues that he had no knowledge of Harris Ballow's criminal background, his scheme to manipulate wrongfully the value of EVTC stock, his status as the beneficial owner of EVTC stock supposedly purchased by private investors, or his intent to resell restricted EVTC shares. Therefore, Keener did not knowingly commit fraud or make misrepresentations to investors or to the SEC. Although the Court has previously ruled that a genuine issue of material fact exists with

regard to scienter,[2] Keener argues that the ruling was based on inadmissible prior testimony from a separate proceeding.

Plaintiff SEC maintains that, when viewed in combination, its allegations against Keener suggest that he acted at least recklessly in ignoring "red flags" raised by Ballow's conduct. Recklessness satisfies the scienter requirement in securities fraud cases, but it must be "severe." *E.g.*, *Meadows v. SEC*, 119 F.3d 1219, 1126 (5th Cir. 1997) ("Liability under § 17(a)(1) attaches only upon a showing of severe recklessness. . . . limited to those highly unreasonable omissions or misrepresentations that involve not only merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 n.3 (5th Cir. 2001) ("[Scienter] encompasses reckless indifference such that the omission or misrepresentation was so obvious that the defendant must have been aware of it.") (internal quotation marks omitted). Plaintiff SEC also argues that inconsistencies in Keener's current affidavit and previous statements raise at least a genuine issue of material fact.

As an initial matter, the Court affirms its earlier ruling allowing Plaintiff to introduce deposition testimony from prior proceedings. Although Federal Rule of Civil Procedure 56(c) does not expressly enumerate prior testimony as a category of summary judgment evidence, the Court sees little substantive difference between prior testimony and affidavit evidence, the weight of which can and should be appropriately discounted

---

[2] Docket No. 139 at 5.

by the reviewing judge.[3] Further, the Court is less troubled by the introduction of such evidence where a case, if summary judgment for the defendant is denied, will proceed to a bench trial, rather than to a jury. Finally, as demonstrated below, the Court did not rely exclusively on prior testimony in analyzing the claims against Defendant Keener.[4]

Moving to the substance of the parties' arguments, the Court acknowledges that Plaintiff has offered little in the way of direct evidence demonstrating Keener's state of mind. However, "[c]ircumstantial evidence can support a strong inference of scienter." *Abrams*, 292 F.3d at 430; *see also Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) ("the proof of scienter required in fraud cases is often a matter of inference from circumstantial evidence. If anything, the difficulty of proving the defendant's state of mind supports a lower standard of proof. In any event, we have noted elsewhere that circumstantial evidence can be more than sufficient."); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 410 (5th Cir. 2001) ("There does not appear to be any question that under the PSLRA circumstantial evidence can support a strong inference of scienter."). Further, Plaintiff is correct that the Court must view the claims and evidence not in isolation, "but taken together as a whole to see if they raise the necessary strong inference of scienter." *Abrams*, 292 F.3d at 431.

As discussed in more detail below, the SEC has introduced a significant amount of circumstantial evidence suggesting that Keener knew 1) that Ballow was the true,

---

[3] Although it is not controlling, the Court notes the reasoning of the Ninth Circuit on this issue: "Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence." *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001).

[4] Even if the prior testimony were considered inadmissible hearsay, Defendant Keener's own prior depositions would likely be admissible as statements by a party opponent. FED. R. EVID. 801(d)(2)(A) (2006).

beneficial owner of EVTC stock supposedly sold to private investors, and 2) Ballow, through those investors, was reselling restricted EVTC shares. At a minimum, the evidence points to Keener's seemingly inexplicable disregard of certain irregular facts:

- In any matter involving the ostensible private investors, Keener never dealt with anyone but Ballow; Mikel Barnwell, who Keener knew to be a close associate of Ballow's, appeared to be in charge of the entities (Pl.'s Supp. Resp., Ex. 14 at 73);

- Before the 1999 sale of EVTC stock, Ballow informed Keener only at the last minute that three investors, not one, would be purchasing 792,801 shares, or 13.7% of EVTC's total outstanding stock (Pl.'s Resp., Ex. 14(b) at 50);

- By Keener's own admission, "the actual money that came in [to pay for the 1999 stock purchase] didn't even necessarily represent what we had on the initially signed investment agreements, because the checks – one of them doesn't match the name that it came on" (Pl.'s Supp. Resp., Ex. 14 at 50-51);

- All of the private investors listed Ballow's personal residence as their business address (Pl.'s Resp., Ex. 28);

- Ballow controlled the timing of the payments for the stock (Pl.'s Resp., Ex. 14(b) at 50-53), and Barnwell signed the checks (Pl.'s Resp., Ex. 28);

- Keener heard rumors from broker Mark Menzel that Ballow was building up EVTC stock using the private entities that had purchased restricted EVTC stock (Pl.'s Resp., Ex. 14(a) at 221-222, Ex. 14(b) at 81-82);

- Keener found it odd that Ballow asked for the purchased stock in various denominations, but did not investigate further (Pl.'s Supp. Resp., Ex. 14 at 59);

- Ballow testified in a prior proceeding that he told Keener that private resales of restricted EVTC stock were occurring (Pl.'s Supp. Resp., Ex. 4(c) at 287).

Plaintiff has also introduced evidence suggesting that Keener and Ballow collaborated closely in strategizing about EVTC and re-directing its business activities. Keener was Ballow's primary liaison with EVTC, at least initially. According to Barnwell, Ballow informed Keener that he was a "market maker," and that he could help raise EVTC's stock price. Pl.'s Resp., Ex. 35 at 20-21, 120-121. Ballow was instrumental in setting up new deals and ventures for EVTC, with which Keener became significantly involved. Ballow was also a major shareholder, holding approximately 22% of EVTC's total outstanding stock by mid-September 2000.

In the Court's view, Plaintiff has introduced enough evidence to support a strong inference that Keener knew of, or at least recklessly disregarded, Ballow's activities, including his use of sham entities to buy a large amount of restricted EVTC stock and resell it to other investors. Keener's conduct, if proven, could constitute fraud under Section 10(b), Rule 10b-5, and Section 17(a)(1), and the failure to disclose Ballow's activities could constitute material misrepresentations or omissions. The Court has previously ruled that Ballow's role in the stock purchases would have been material to investors,[5] and in any case, Keener does not contest materiality in his second motion for summary judgment. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact relating to the above-described sales and resales of EVTC stock. Therefore, summary judgment is denied to Defendant Keener on Plaintiff's claims under Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a)(1) of the Securities Act.

---

[5] Docket No. 139 at 6.

**2. Section 13(a) of Exchange Act and Rules 13a-1, 13a-11, 12b-20**

Section 13(a) of the Exchange Act and Rules 13a-1, 13a-11, and 12b-20 require issuers of registered securities to make certain filings with the Securities and Exchange Commission. Under Rule 12b-20, "[i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b-20. Plaintiff alleges that Defendant Keener knowingly aided and abetted EVTC in making materially false and misleading statements in Form 10-K annual reports and Form 8-K current reports filed with the SEC.

In order to establish Keener's liability under these claims, Plaintiff SEC must show "(1) that the primary party committed a securities violation; (2) that the aider and abettor had 'general awareness' of its role in the violation; and (3) that the aider and abettor knowingly rendered 'substantial assistance' in furtherance of it." *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993). Keener does not contest the first prong; indeed, it is undisputed that certain EVTC filings from 1999 and 2000 reflect omissions and irregularities. For example, a Form 8-K current report filed in August 1999 reported that the 1999 purchaser of EVTC stock was a single "private investor," instead of listing the multiple investors (Belsly Investment, Belfast Ventures, Baldridge Ventures, and Texas Investment Corporation) who were actually involved in the purchase. Even after EVTC issued the stock, the December 1999 Form 10-K still described the purchaser as a single private investor. Ballow's roles as a business adviser and principal shareholder

were never described in SEC filings, much less his alleged status as the beneficial owner of 13.7% of EVTC stock.

Keener again argues that Plaintiff has failed to demonstrate the required element of scienter—that Keener *knowingly* assisted EVTC in making false statements and omissions in SEC filings.  However, Keener has himself admitted that as CFO and later President, he oversaw the preparation of EVTC's 10-K reports.  Pl.'s Resp., Ex. 14(a) at 16.  Further, other EVTC filings with the SEC bear Keener's signature.  Pl.'s Resp., Exs. 21, 22, 25.  The Court is mindful of the Fifth Circuit's admonition that "[a] pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Abrams*, 292 F.3d at 432.  In this case, though, Keener has conceded his direct involvement in the preparation of SEC filings that were questionable in omitting any reference to Ballow, and plainly incorrect in describing the purchasers of EVTC stock in 1999.  Because the evidence introduced by Plaintiff raises genuine issues of material fact with regard to Keener's knowledge of and substantial assistance in preparing these reports, Keener is not entitled to summary judgment on these claims.

### 3.  Sections 17(a)(2) and (a)(3) of the Securities Act

Sections 17(a)(2) and (a)(3) of the Securities Act prohibit material misstatements, omissions, or fraud in the offer or sale of securities.  Unlike Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act, "[s]cienter is not an element of a 17(a)(2) or 17(a)(3) cause of action, however.  Under these subsections, culpability is established merely by a showing of negligence." *Meadows,* 119 F.3d at 1225 n.15 (internal citation omitted).  According to Defendant Keener, the SEC has introduced no

evidence to show that he was negligent with regard to Ballow's manipulation of EVTC stock.

As discussed above, the Court has already found enough evidence in the record to support a strong inference that Keener acted knowingly or recklessly in abiding or ignoring Ballow's wrongful conduct.  Further, Keener has himself stated that "we basically never did any real due diligence is the best way I can sum that up; rightly, wrongly or indifferently, that was never properly done on Ballow." Pl.'s Resp., Ex. 14 at 34.  In light of the evidence suggesting that Keener and Ballow worked closely together on EVTC ventures, the indications of Ballow's manipulation of EVTC stock, and Keener's own admission of a failure to perform due diligence, summary judgment is denied on this claim.

### 4. Sections 5(a) and 5(c) of the Securities Act (15 U.S.C. 77e(a) and 77e(c)

Sections 5(a) and 5(c) of the Securities Act prohibit the offer and sale of unregistered securities.  Plaintiff SEC contends that in 1999 and 2000, EVTC made several sales of stock to various entities ostensibly represented by Ballow, but did not register these sales with the SEC.  Keener admits that the sales occurred, but claims two exemptions from the registration requirement.  Plaintiff correctly notes that Keener bears the burden of proving that the sales were exempt. *SEC v. Continental Tobacco Co.*, 463 F.2d 137, 156 (5th Cir. 1972).

Keener first claims that the securities were exempt from registration under Rule 506 of Regulation D (17 C.F.R. § 230.506).  Regulation D exempts an issuer who offers and sells restricted securities without general solicitation to a limited number of investors, as long as those investors are sophisticated enough to understand the merits and risks of

the offering, and certain information is furnished to the investors. Regulation D allows the investors to use a "purchaser representative," as long as he or she "is not an affiliate, director, officer, or other employee of the issuer, or beneficial owner of 10 percent or more of any class of the equity securities or 10 percent or more of the equity interest in the issuer . . .". 17 C.F.R. § 230.501(h).

Plaintiff asserts that Ballow was indeed the beneficial owner of the stock purchased by the "private investors," who were actually sham entities. As briefly discussed above, the SEC has offered strong evidence demonstrating Ballow's beneficial ownership of the EVTC stock. The only individuals with whom Keener ever dealt regarding the 1999 and 2000 EVTC stock sales were Ballow and Barnwell, even though numerous other "private investors" were supposedly involved. All of the private investors listed Ballow's personal residence as their business address. Ballow controlled the timing of the payments for the stock purchases, Barnwell signed the checks, and by Keener's own admission, the names on the checks did not seem to match up with the names of the investors who had purchased the stock. Keener previously testified that he heard Ballow describe his own "substantial interest" in Belsly Investment. Pl.'s Resp., Ex. 14(b) at 60. Broker Mark Menzel believed that securities accounts for Belsly Investment, Belfast Ventures, Baldridge Ventures, and Texas Investment Corporation really belonged to Ballow. Pl.'s Resp., Exs. 15(a)-(b). Plaintiff has demonstrated a genuine issue of material fact with respect to Ballow's beneficial ownership of the EVTC stock.

In the alternative, Keener invokes Section 4(2) of the Securities Act, which exempts from registration requirements "transactions by an issuer not involving any

public offering." 15 U.S.C. § 77d(2). The Fifth Circuit has adopted a four-factor analysis to distinguish private and public offerings, under which the Court must examine "1) the number of offerees and their relationship to the issuer; 2) the number of units offered; 3) the size of the offering; and 4) the manner of the offering." *E.g.*, *Mary S. Krech Trust v. Lakes Apartments*, 642 F.2d 98, 101 (5th Cir. 1981). The Fifth Circuit has noted that these types of transactions are "limited in order to prevent and exempt private offering from becoming a mere conduit for a public offering without a registration statement," *id.*, and the Supreme Court has stated that "[t]he design of the statute is to protect investors by promoting full disclosure of information thought necessary to informed investment decision." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953).

According to Plaintiff, the 1999 and 2000 EVTC stock sales do not fall under Section 4(2) because Ballow used sham entities to purchase the stock, and did so with a view towards distributing the stock to other persons, making him an "underwriter." Plaintiff has introduced ample evidence that the restricted stock issued to the private investors was indeed resold to numerous individual investors. *E.g.*, Pl.'s Supp. Resp., Exs. 11, 13, 16, 41-45, 49-52. In addition, Keener noted that Ballow asked for the stock to be issued in various denominations, and Ballow testified previously that he told both Cannan and Keener that he planned to resell EVTC stock. Pl.'s Supp. Resp., Ex. 4(c) at 287. If proven, Plaintiff's allegations would call into serious doubt both the relationship of the offerees with the issuer and the manner of the offering, and would strongly suggest that the sale of shares by EVTC to the "private investors" was indeed merely a conduit for an unregistered public offering. Plaintiff has demonstrated a genuine issue of material fact with regard to Ballow's status as an underwriter of the 1999 and 2000 sales of

restricted EVTC stock. Defendant Keener is not entitled to summary judgment on these claims.

## III. CONCLUSION

Defendants' Second Motion for Summary Judgment and Supplemental Motion for Summary Judgment are hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 23rd day of March, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**